IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

PAUL F. JOHN,                    :
#0633693                        :
      Plaintiff,                :
                                :
vs.                             :     CIVIL ACTION 13-01-CG-M
                                :
SAM COCHRAN, *et al.,*          :
      Defendants.               :
                                :


REPORT AND RECOMMENDATION

This is an action under 42 U.S.C. § 1983 brought by a
Mobile County Metro Jail pretrial detainee, Paul F. John,
proceeding *pro se* and *in forma pauperis,* which has been
referred for report and recommendation pursuant to 28
U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4).  It is now
before the undersigned on the Motion for Summary Judgment
of Defendants, Sheriff Sam Cochran, Corizon Health, Dr.
Barrett, and Warden Noah Price Oliver, III, (Docs. 23, 37,
39), and Plaintiff's Response thereto.  (Docs. 26, 31, 32,
38, 44, 45, 46).   After consideration of these pleadings
and motions, and for the reasons set out below, it is
recommended that Defendants' Motion for Summary Judgment be
granted and Plaintiff's claims against Defendants be
dismissed with prejudice.

I.   PROCEDURAL HISTORY

Plaintiff filed his § 1983 Complaint on January 2, 2013. As Defendants, he names Mobile County Sheriff Sam Cochran, Corizon Health, Dr. Barry Barrett, and Warden Noah Price Oliver, III. (Doc. 1). Since then, Plaintiff has filed at least twelve other documents or motions requesting to enter evidence, attachments or exhibits.[1] Plaintiff's Motion to Introduce Evidence (doc. 5) is treated as part of his Complaint. (*See* Endorsed Order Doc. 6). On June 25, 2013, and as a result of his repetitive filing, Plaintiff was ordered to file any additional statements as responses to Defendants' Motion for Summary Judgment. (Doc. 40).

On May 10, 2013, Defendants Barrett and Corizon filed their Answer and Special Report denying Plaintiff's allegations and asserting, *inter alia*, that there is no causal relationship, legal or proximate, between any actions or failures to act by the Defendants and Plaintiff's alleged injuries and damages; Defendants Barrett and Corizon also assert qualified and sovereign

---

[1]    *See e.g.,* (Doc. 8)(Notice of Filing Inmate Grievance), (Doc. 16)(Motion to Enter Statement and Complaint Copy to Medical), (Doc. 19)(Notice Regarding Exhibit Attachment), (Doc. 26)(Response to Defendants [sic] Legal Argument of Civil Action), Doc. 27)(Notice Regarding Exhibit Attachment)(Docs. 31, 32)(Motion to Enter Statement in Case), (Doc. 38)(Motion to Attachment and Enter New Statement), (Doc. 44)(Explanation of Summary Judgment), (Doc. 45)(Motion Supporting Summary Judgment), (Doc. 46)(Motion to Enter response to Undisputed Facts/And Lack of Medical Care).

immunity.  (Docs. 21, 23).  On June 17, 2013, Defendants
Cochran and Oliver filed their Answer and Special Report
denying Plaintiff's allegations and asserting immunity[2] and
failure to state a claim against these Defendants.  (Docs.
36, 37).  The Court converted Defendants' Special Reports
to a Motion for Summary Judgment (doc. 39), to which
Plaintiff filed his responses.  (Docs. 26, 44, 45, 46; *see
also* n. 2 for additional filings considered in this
Report).

On August 22, 2013, Defendants were collectively
ordered to supplement their Special Reports clarifying what
the orthopedic referral was to address; whether Plaintiff
had been taken to the orthopedist, and, if not, why not;
and to provide the Court with additional medical records
through the date of said order.  (Doc. 49).  On September
12, 2013, Defendants Barrett and Corizon supplemented their
Special Report with medical records through the date of the
Order and an additional affidavit from Dr. Barrett
clarifying the treatment he ordered Plaintiff to receive
for his complaints.  (Doc. 53).

---

[2]    Collectively, Defendants set forth various immunities
as affirmative defenses.  However, since the Court finds
herein that Plaintiff's allegations related to his lack of
medical care, conditions of confinement and retaliation do
not establish a constitutional violation, there is no need
to make further inquiry as to immunity.

Defendants Cochran and Oliver supplemented their Special Report on September 6, 2013, with additional medical records through April of 2013, an orthopedic report from January 22, 2013, and results of Plaintiff's T-spine x-rays taken on May 2, 2013. (Doc. 52). Plaintiff responded to Defendants' supplements mostly with questions directed toward Dr. Barrett and the statement that he rests his case. (Doc. 54 at 1-2).

## II. SUMMARY OF FACTUAL ALLEGATIONS

From its review of the record, the Court summarizes the parties' allegations that are material to the issues addressed in this Report and Recommendation.

Plaintiff, a pretrial detainee in Mobile Country Metro Jail ("Metro"), alleges in his Complaint Eighth Amendment violations due to inadequate medical care pertaining to his broken right hand and his T-spine compression fracture,[3] and complaints regarding the conditions of his confinement. (Doc. 1 at 4). Subsequent to filing his Complaint, Plaintiff alleges that he lacks access to a law library and fears of retaliation from jail staff for filing this

---

[3] Plaintiff also alleges that his left shoulder is dislocated; however, he does not explain how or when this injury occurred or what treatment he did or did not receive for it. This is the only time this injury is alleged and it is not causally connected to any particular defendant. It should be denied.

lawsuit.  (Docs. 8, 16, 44 at 2, 2, 2); (*see also* Docs. 19,
38, 45, 46 at 3, 2, 1, 1).  Those allegations are not
properly raised in the Complaint and should be denied on
that basis.[4]  However, to the extent that those allegations
are found to be adequately raised, they will be considered
in this Report, despite the Defendants' lack of notice and
opportunity to respond to those allegations.

After being booked into Metro on November 9, 2013,
Plaintiff was initially housed in the medical wedge,
although he has since been moved in and out of the medical
wedge, general population and the suicide wedge.  (Docs.
23-2, 37-1 at 25-65, 1).  Though Plaintiff complains over
and over of the same conditions of his confinement, the
thrust of his Complaint is regarding the medical treatment
he did or did not receive for his broken right-hand, and T-
spine compression fracture and the cleanliness and
overcrowding at Metro.  Generally, Defendants deny
Plaintiff's allegations in their Special Reports stating
that Plaintiff "received medical care and treatment within
the standard of care of physicians practicing medicine in
the state of Alabama" (doc. 23-1 at 4) through Corizon

---

[4]     *See* (Doc. 1 at 2, subsection E)(requiring the
complaint to "be a short and plain statement of [the] claim
. . . provid[ing] fair notice to each defendant of the
claim against that defendant and of the factual grounds
upon which the claim rests").

Health medical staff (doc. 37-1 at 2), but that Plaintiff "suffers from polysubstance abuse issues" (doc. 23-1 at 2) and seeks pain medication when none is needed. (*Id*. at 3). The facts as they pertain to each alleged injury and claim are as follows.

## A. Right Hand Fracture

In conjunction with his arrest on November 9, 2012, for, *inter alia,* possession of a controlled substance (doc. 23-2 at 5), Plaintiff was taken to the University of South Alabama Medical Center Emergency Department where he was treated for a broken right hand. (Docs. 1, 23-2 at 4, 67) A cast was placed on his hand and wrist (Doc. 1 at 4) and he was prescribed tramadol for pain and instructed to follow up with orthopedics within two to three weeks. (Doc. 23-2 at 68).

Once at Metro, Plaintiff was under the care of Alabama licensed physician, Barry Barrett, M.D., who was the Medical Director at that time.[5] (Doc. 23-1 at 1). At some point after being booked into Metro, Plaintiff removed his cast himself prior to his hand properly healing.[6] (Doc. 23-

---

[5]   As of March of 2013, Dr. Barrett is in private practice in Pensacola, Florida. (Doc. 23-1 at 1).

[6]   Plaintiff contends throughout the record that he did not remove the cast himself, rather the cast was removed by medical for his own protection while housed in the suicide wedge. (*See* Docs. 5, 26 at 4, 1). Plaintiff's unsworn

1 at 3). Plaintiff alleges that he made several attempts to have his cast replaced (docs. 1, 5, 26, 38, 46 at 4, 4, 1, 2-3, 2), but Dr. Barrett "placed to [sic] tongue depressors with adhesive tape on this fractured hand rather than have the hand placed in a cast again." (Doc. 1 at 4); (*see also* Doc. 38 at 2). Despite this allegation, the medical records provided do not reflect that Dr. Barrett taped tongue depressors to his fractured hand. Plaintiff contends that his right hand is now twice the size of his left hand and continues to swell. (Docs. 38, 44, 46 at 2, 2, 2). Plaintiff also insists that "[a]ll new doctor [sic] at jail also stated [that] Dr. Barrett should have put a new cast on [] Plaintiff's hand [and] Dr. Barrett has been negligent in diagnosing plaintiffs [sic] claims." (Doc. 26 at 1-2). (*See also* Doc. 31 at 2-3)(Plaintiff contends it is medical malpractice to place two tongue depressors on

---

allegations are pled in a conclusory manner and a conclusion cannot be taken as true. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009); *see also Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1217 (11th Cir. 2000)("[t]his court has consistently held that conclusory allegations without specific supporting facts have no probative value"); *Fullman v. Graddick,* 739 F.2d 553, 556-57 (11th Cir. 1984)(a Plaintiff's mere verification of conclusory allegations is not sufficient to oppose a motion for summary judgment). Thus, for purposes of this Report, the Court relies on Dr. Barrett's sworn affidavit (doc. 23-1) as being an accurate reflection of the facts.

Plaintiff's hand and requests that the Court not "close its eyes to these medical malpractices").

Plaintiff admits that he has been treated by the doctor and nurses at Metro (*see e.g., inter alia,* docs. 1, 5, 8 at 4, 1, 3), though he disagrees with his treatment as being "categorically wrong, causing him undue pain & suffering, and violating his 8th amendment rights under the United States Constitution." (Doc. 1 at 5-6).

In their Special Report, Defendants' Barrett and Corizon deny Plaintiff's allegations that he received inadequate medical care. (Docs. 23, 23-1, 23-2). Dr. Barrett attests that Plaintiff was neither delayed nor denied treatment for his injuries; the treatment he received was within the standard of care of physicians practicing medicine in the state of Alabama; x-rays of Plaintiff's right forearm and three views of his right hand were taken; and a cast was originally prescribed to aid healing (though Plaintiff removed the cast himself). (Doc. 23-1 at 3-4); *see* n.6 *supra* p. 5 regarding cast removal). Plaintiff's medical records attached to Defendants' Special Report support Dr. Barrett's statements and reflect that, on multiple occasions, Dr. Barrett treated Plaintiff with pain medication, muscle relaxers, anti-inflammatories, referrals to see an orthopedic doctor, and an x-ray of his

right hand and forearm indicating a "Boxer's right hand fracture."[7] (Docs. 23-1 at 3; *see also* (Doc. 23-2 at 14-19, 73); (Docs. 52-1, 53 at 3, 13). Defendant Corizon, through its Health Services Administrator, Marquett Williams, also attests that Dr. Barrett and the nurse staff at Metro's Health Care Clinic regularly saw and treated Plaintiff without delay for his complaints. (Doc. 23-1 at 7).

Defendants Cochran and Oliver respond to Plaintiff's allegations admitting that, though Defendant Cochran is ultimately responsible for inmates' medical needs, this has been accomplished by contracting with Defendant Corizon, whose medical staff addressed all of Plaintiff's medical needs. (Doc. 37, 37-1 at 1, 2).

Plaintiff's reply to Defendants' response realleges that his right hand "is twice as big as his left hand" (doc. 38, 44 at 2, 2); (*see also* doc. 46 at 2), he feels pressure in his hand (doc. 46 at 2), he wanted another cast put on his hand, but instead, Dr. Barrett placed "2 tongue depressors with paper adhesive tape witch [sic] came off

---

[7] "A boxer's fracture is a break through the bones of the hand that form the knuckles," particularly the bones that connect the ring finger or the little finger to the wrist. Manuel Hernandez, MD, *Boxer's Fracture,* Boxer's Fracture Overview (September 24, 2013, 9:57 AM), http://www.emedicinehealth.com/boxers_fracture/article_em.htm#boxers_fracture_overview. These are known as the fourth and fifth metacarpal bones. (*Id.).*

Plaintiff['s] hand an [hour] later." (Doc. 38 at 2).

Plaintiff contends that he is "not getting the care he needs and not being allowed to seek help that will help him." (Doc. 46 at 2). Plaintiff does not allege any exacerbation of or new injury to his hand due to Dr. Barrett treating him by placing tongue depressors on his hand with adhesive tape.

In their supplement, Defendants submit an affidavit by Dr. Barrett and additional medical records regarding Plaintiff's hand. (Docs. 52, 53). The affidavit sets out that on December 10, 2012, the orthopedic referral was ordered regarding Plaintiff's hand pain only. (Doc. 53 at 4). The orthopedic follow up occurred on January, 21, 2013, with a radiologist report concluding that there was only mild tenderness and no significant swelling at the fracture site. (*Id.* at 14). There is no evidence of malrotation, all fingertips align evenly and the patient may weightbear as tolerated with over the counter medications as needed for pain. (*Id.*). No additional follow up treatment was ordered for Plaintiff's hand.

The Court notes that Plaintiff does not indicate anywhere in the record how he is impeded by this fracture. He offers no evidence establishing that he can't complete

his daily activities, such as shaving or eating; rather, he merely complains of swelling and pain at the fracture site.

## B.   Compression Fracture

Throughout the record, Plaintiff complains of a T-11 compression fracture.[8]  Plaintiff also alleges that he has developed a fatty tumor on the right side of his lower back that sticks out like a knot and causes him pain when he bends over.  (Docs. 19, 26, 32, 44, 46 at 2, 2, 2, 2, 2). Without any evidentiary support, Plaintiff attributes the development of this knot to sleeping on the floor of his cell in general population.  (Doc. 32 at 2).  While there is no dispute that Plaintiff's back pain was treated on a regular basis with pain medication (docs. 8, 19, 23-2 at 3, 2, 18), muscle relaxers (docs. 8, 31 at 3, 2), anti-inflammatories (doc. 31 at 3), and x-rays (docs. 23-2 at 14-19, 70), Plaintiff disagrees with his course of treatment.

In the Complaint, Plaintiff contends that Defendants Barrett and Corizon did nothing to address his "long standing T-spine compression fracture" (doc. 1 at 5), and that Dr. Barrett's treatment is either "categorically wrong" (*id.*) or he has "categorically ignored the

---

[8]    *See e.g.,* Docs. 1, 10, 31, 32, 38, 44, 45, 46 at 4-5, 1, 2, 2, 2, 2, 1, 2).

problems." (Doc. 5 at 1); (*see also* Doc. 8 at 3)(Plaintiff asserts he needs a T-spine x-ray instead of an L-spine x-ray); (Doc. 16 at 4)(Plaintiff has "no pain med and is suffing [sic] a great deal); (Doc. 19 at 2)(Plaintiff complains that Dr. Barrett's reduction in pain medication is causing him to suffer in pain); (Doc. 26 at 1-2)(Plaintiff claims medical malpractice because he received an x-ray instead of high tech MRI and asserts that "prison medical staff should have done more to diagnose and/or treat the Plaintiff"); (Doc. 31 at 1-3)(disagreement with Dr. Barrett's decision to place him on "muscle relaxers[,] which do not help" instead of pain medication and that no anti-inflammatories [] are going [to] stop the suffering this plaintiff is going through"); (Doc. 32 at 2)(contention that Metro's refusal to allow Plaintiff to have back surgery has caused the compression fracture to create a fatty tumor, which cannot go untreated); (Doc. 38 at 2)(Plaintiff's request to see spine doctor was refused); (Doc. 44 at 2)(Plaintiff's tumor "has been over looked by Corizon Health Care" and "Plaintiff is on medications that don't help"); (Doc. 45 at 2)(Plaintiff has been refused pain management); (Doc. 46 at 2)(Plaintiff contends that his pain medications were discontinued despite being the only thing that helps him and he believes that he should be

housed in medical wedge since his spine keeps him from fighting with other inmates).[9]

Defendants Barrett and Corizon's response attests that Plaintiff has a polysubstance abuse issue and, based on the L-spine x-ray, "[t]here is no evidence whatsoever that [Plaintiff] suffers from a compression fracture or any other fracture of his back.  When [Plaintiff] complained of pain in his back, an x-ray was obtained that was read as normal.  [Plaintiff] has no issues related to his back that are surgical in nature."  (Doc. 23-1 at 2).  "[Plaintiff] is an inmate that seeks pain medication when none is needed."  (*Id.*); (*see also* (Doc. 23-2 at 66-67)(Plaintiff admits to daily consumption of a fifth of whiskey and

---

[9]  Regarding Plaintiff's insistence that he should be housed in the medical wedge instead of general population because he can't fight with other inmates due to his back, the Court finds this claim without merit.  First, Plaintiff fails to properly raise this claim in the Complaint.  Additionally, while the Fourteenth Amendment prohibits any State from depriving a person of life, liberty, or property without due process of law, prison officials have full discretion to control conditions of confinement, including prisoner classification.  *Sanchez v. McCray,* 349 Fed. App'x. 479, 481 (11th Cir. 2009)(*citing Moody v. Daggett,* 429 U.S. 78, 88 n.9 (1976).  There is no constitutionally protected interest in being housed in a certain prison or a certain section within a prison.  *Meachum v. Fano,* 427 U.S. 215, 223 (1976).  Without sufficient evidence proving otherwise, Plaintiff has no liberty interest in what wedge he is housed at Metro.  Prior to reassigning Plaintiff to a new wedge, the medical staff evaluated him to determine his ability to appropriately function in that wedge.  (Doc. 37-1 at 1-2).  Therefore, Plaintiff's due process rights were not violated by the medical staff at Metro.

handful of Xanax and Lortab and quitting drug rehab after two days); (Doc. 26 at 1)(Plaintiff purposely overdosed on blood pressure medication); (Doc. 31 at 2)(Plaintiff admits to overmedicating himself before getting locked up)).

Though Plaintiff disagrees with his course of treatment, the medical records reflect that Dr. Barrett and the nurses at Metro treated Plaintiff with consistency and regularity. (Docs. 8, 23-2 at 3, 14-19).

Defendants Cochran and Oliver's response attests that the medical staff at Metro has addressed Plaintiff's medical concerns. (Docs. 37-1 at 2). Replying to Defendants' Motion, Plaintiff alleges that Defendants are committing medical malpractice and the "lack of medical care . . . is becoming an epidemic that is being overlooked and ignored by [Defendants]" and costing Plaintiff "undue pain and suffering and maybe even his life if untreated." (Docs. 31, 32 at 2,2); *see also* (Doc. 44 at 2)(tumor has been overlooked by Corizon). Plaintiff contends that he "has no F.T.A.'s[10] on his record, . . . no big criminal history, . . . and he only ask [sic] for what is right and that is medical treatment and a surgery." (Doc. 46 at 3).

---

[10] The Court assumes that Plaintiff's use of "F.T.A." stands for "failure to appear."

In their supplement to their Special Report, Defendants submit additional medical records which indicate that, on May 2, 2013, a T-spine x-ray was taken of Plaintiff's back which concluded that a mild compression fracture of indeterminate age was present at the T12 vertebral body with anatomic alignment. (Docs. 52-1. 53 at 1, 14). Follow up treatment for the identified compression fracture is not included in the supplemental affidavit or medical records, as Plaintiff is no longer under Dr. Barrett's care. However, it remains undisputed that Plaintiff was consistently seen by Dr. Barrett and, by Plaintiff's own admission, prescribed multiple and various prescriptions for muscle relaxers, pain medication and anti-inflammatories, not only by Dr. Barrett, but also by the treating physician who succeeded Dr. Barrett. (Docs. 8, 23-1, 23-2, 31, 53 at 3, 4, 14-19, 2-3, 4-6).

Plaintiff responds to Defendants' supplement mostly with questions addressed to Dr. Barrett as to why he didn't spot Plaintiff's compression fracture sooner. (Doc. 54 at 1-2).

### C. Request for Dr. Houston's Medical Records and Medical Malpractice

On multiple occasions, Plaintiff has requested that the medical staff at Metro obtain copies of his medical

records from his previous doctor, Dr. John T. Houston.

(*See e.g.,* Docs. 1, 5, 19, 26, 31, 32, 44, 45, 46 at 5, 3,

2, 1, 3, 2, 1, 1, 2).  Plaintiff contends that Dr. Barrett

and Metro's failure to obtain his medical history from Dr.

Houston is medical malpractice because "any doctor would

send for a medical report from your old doctor if the new

doctor was going to be treating you . . . [and] Dr. Barrett

made decisions . . . on his finding [and] did not go 2

steps to look at Plaintiff's doctors [sic] medical

record[,] in fact he fail [sic] to send off for them."

(Doc. 26 at 1-2).

Defendants respond that Plaintiff's medical needs were

accommodated by Corizon and Dr. Barrett, who provided

"medical care and treatment within the standard of care of

physicians practicing in medicine in the state of Alabama."

(Docs. 23-1, 37-1 at 4, 2).  What prior medical records

are needed for proper treatment is a medical decision.

### D.  Conditions of Confinement

Plaintiff complains that the conditions of his

confinement in the medical wedge and in general population

violate the Eighth Amendment.[11]  (Doc. 1, 5, 16, 19, 26, 31,

---

[11]     Though not raised in the Complaint, Plaintiff alleges
that his right to access a law library is being violated.
(Docs. 8, 44 at 2, 2).  He alleges that he "has asked for
law libarry [sic] and has been refused."  (Doc. 45 at 1).

32, 38, 44, 46 at 5, 2, 1-2, 2, 2, 2, 2, 2, 2, 2).
Plaintiff alleges that there are "glaring" ADA violations
in the medical wedge such as "[no] emergency call lights,
handicap showers, rails, elevated toilets, rails on the
toilets, wheelchairs do not fit in cell doors, [and] simple
[sic] put, no provisions are made for disabled people at
all" and there is mold in the showers, food tables,
drinking fountain, and around the toilets.  (Doc. 1 at 5).

In general population, Plaintiff complains "the walls
and floors are vary [sic] dirty to live in.  When Plaintiff
. . . ask [sic] for cleaning stuff it is always put off and
never taken care of."  (Doc. 16 at 2).  Plaintiff also
takes issue with the overcrowding in general population
stating that he is "forced to lay on a concert [sic] floor
suffing [sic] in pain with no medical help at all staying
in a [sic] overcrowded cell . . . made to hold 2 inmates at
a time[, but] are holding double inmates 4, 2 on the floor,
2 on bunk beds."  (Doc. 16 at 1).  Plaintiff alleges that
lying on the floor in his cell has aggravated his
compression fracture creating the fatty tumor of which he
contends is causing him a great deal of suffering.  (Docs.
31, 32, 38 at 2, 2, 2).  As a result, Plaintiff insists

This is a conclusory allegation, which, without more, does
not state a claim against any Defendant.  *See Fullman*, 739
F.2d at 556-57.

that he should be housed in the medical wedge instead of general population because he is unable to fight with other inmates due to his compression fracture.  (Docs. 45, 46 at 2, 2).

Defendants Barrett and Corizon's response attests that the medical director treated Plaintiff for his complaints, and "determin[ed] that there is no medical reason to justify that [Plaintiff] be housed in the medical unit . . . [as he] does not suffer from any injuries or illness that necessitates that he be housed in the medical unit."  (Doc. 23-1 at 4, 7).

Defendants Cochran and Oliver's response likewise states the determination to be placed in the medical wedge is made by medical personnel, who assessed Plaintiff and determined that he was able to function in general population.  (Doc. 37-1 at 2).  Regarding the alleged ADA violations, Defendants Cochran and Oliver assert that though they believe the jail is compliant with the Americans with Disability Act, the Sheriff's office is not responsible for erecting and maintaining the physical facilities and "Metro Jail staff has no authority to make alterations and/or changes to the physical structure of the jail."  (Doc. 37-1 at 2-3).

F.  Retaliation

Lastly, again failing to raise it in his Complaint, Plaintiff argues that he "fears for his life and safety due to the filing of his civil action . . ., fears that he will not get a fair trial on his pending court case and also fears harassment from staff at Metro Jail." (Doc. 16 at 2); (*see also* (Docs. 19, 38, 45, 46 at 3, 2, 1, 1). The Court notes that nowhere in the record does Plaintiff allege any action or inaction by any Defendants in retaliation to Plaintiff for filing this action; rather, Plaintiff merely alleges "fear" that this will happen.

For relief, Plaintiff requests "[d]eclaratory judgment to make the medical pod in compliance with ADA and $100,000.00 punitive/compensatory damages as to each defendant in their personal capacity[,] professional capacity or both." Doc. 1 at 9.

### III. SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment. It is well-established that summary judgment is proper under Federal Rule of Civil Procedure 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989). However, Rule 56(e) states that:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> > (1) give an opportunity to properly support or address the fact;
> > (2) consider the fact undisputed for purposes of the motion;
> > (3) grant summary judgment if the motion and supporting materials-- including the facts considered undisputed--show that the movant is entitled to it; or
> > (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be

granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

249-50 (1986) (citations omitted). "Summary judgment is

mandated where a party 'fails to make a showing sufficient

to establish the existence of an element essential to that

party's case, and on which that party will bear the burden

of proof at trial.'" *Custom Mfg. & Eng'g, Inc. v. Midway

Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007) (citations

omitted).

## III. DISCUSSION

### A. Eighth Amendment Violations

As discussed above, Plaintiff alleges in his § 1983

Complaint that Defendants violated his rights under the

Eighth Amendment by providing inadequate medical care

pertaining to his broken right hand and T-spine compression

fracture, housing him in less than humane conditions of

confinement, and later raised allegations of retaliation

against him for filing the present action. Section 1983

provides in pertinent part that:

> Every person who, under color of any
> statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the
> District of Columbia, subjects, or causes to
> be subjected, any citizen of the United
> States or other person within the
> jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities
> secured by the Constitution and laws, shall
> be liable to the party injured in an action

at law, suit in equity, or other proper
proceeding for redress. . . .

42 U.S.C. § 1983.

In addressing Plaintiff's claims under § 1983, the
Court begins its analysis "by identifying the specific
constitutional right allegedly infringed. . . ." *Graham v.
Connor,* 490 U.S. 386, 394 (1989). Based on his medical
treatment and conditions of confinement, Plaintiff claims
Eighth Amendment violations against Defendants Barrett and
Corizon, and Defendants Cochran and Oliver, respectively.
The Eighth Amendment provides that, "[ex]xcessive bail
shall not be required, nor excessive fines imposed, nor
cruel and unusual punishments inflicted." U.S. Const.
amend. VIII.[12]

To prevail on a claim for inadequate medical care, an
inmate must show that the defendants acted with deliberate
indifference to his serious medical needs. *Estelle v.*

---

[12]   Because Plaintiff is incarcerated as a pretrial
detainee, his claims will be considered under the
Fourteenth Amendment Due Process Clause since states
may not punish pretrial detainees at all prior to
their lawful conviction of a crime. *Hamm v. DeKalb
Cnty.,* 774 F.2d 1567, 1572-74 (11th Cir. 1985)(*citing
Bell v. Wolfish,* 441 U.S. 520, 562 (1979)(stating that
conditions of confinement imposed prior to conviction
are limited instead by the due process clause of the
fourteenth amendment). The minimum standard allowed
by the due process clause is the same as that allowed
by the Eighth Amendment, therefore an Eight Amendment
analysis is equally as applicable to Plaintiff's
claims as a Fourteenth Amendment analysis. *Id.*

*Gamble,* 429 U.S. 97 (1976).  In *Estelle,* the Supreme Court
held that a prison official's deliberate indifference to
the serious medical needs of a prisoner constitutes the
unnecessary and wanton infliction of pain proscribed by the
Eighth Amendment.  *Estelle* at 104; *see also Campbell v.
Sikes,* 169 F.3d 1353, 1363 (11th Cir. 1999)(stating "[t]he
Eighth Amendment prohibits prison officials from exhibiting
deliberate indifference to prisoners' serious medical
needs").  "However, not every claim by a prisoner that he
has not received adequate medical treatment states a
violation of the Eighth Amendment."  *McElligot v. Foley,*
182 F.3d 1248, 1254 (11th Cir. 1999)(citation omitted).
The inadvertent or negligent failure to provide adequate
medical care cannot be said to constitute an unnecessary
and wanton infliction of pain. . . . Medical malpractice
does not become a constitutional violation merely because
the victim is a prisoner."  *Estelle,* 429 U.S. 97, 105-06.
Thus, a prisoner must allege acts or omissions sufficiently
harmful to evidence deliberate indifference to serious
medical needs.  *Id.* at 106.

    The Eleventh Circuit delineated the objective and
subjective portions of an Eighth Amendment claim, which
must be met in order to prove an Eighth Amendment
violation:

> An Eighth Amendment claim is said to
> have two components, an objective
> component, which inquires whether the
> alleged wrongdoing was objectively
> harmful enough to establish a
> constitutional violation, and a
> subjective component, which inquires
> whether the officials acted with a
> sufficiently culpable state of mind.

*Sims v. Mashburn,* 25 F.3d 980, 983 (11th Cir. 1994)(*citing Hudson v. McMillian,* 503 U.S. 1, 8 (1992)).  The objective component of the Eighth Amendment requires a plaintiff to demonstrate that an "objectively serious medical need" exists.  *Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir. 2003).  A serious medical need is "considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Id.* (*citing Hill v. DeKalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1187 (11th Cir. 1994) overruled on other grounds in *Marsh v. Butler Cnty., Ala.,* 268 F.3d 1014, 1031 n. 8 (11th Cir. 2001)(quotation marks omitted)).  "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm."  *Id.* (citations and quotation marks omitted).

In order to meet the subjective requirement of an Eighth Amendment denial of medical care claim, Plaintiff must demonstrate "deliberate indifference" to a serious

medical need.  *Farrow,* 320 F.3d at 1243.  "Deliberate

indifference entails more than mere negligence.  *Estelle,*

429 U.S. at 106; *Farmer v. Brennan,* 511 U.S. 825, 835

(1994).  The Supreme Court held that a prison official

cannot be found deliberately indifferent under the Eighth

Amendment "unless the official *knows of* and *disregards an*

*excessive risk to inmate health or safety;* the official

must both be aware of facts from which the inference could

be drawn that a substantial risk of serious harm exists,

and he must also draw the inference."  *Farmer,* 511 U.S.,

825, 837-38 (emphasis added).  However, "an official's

failure to alleviate a significant risk that he should have

perceived but did not, while no cause for commendation,

cannot under our cases be condemned as the infliction of

punishment."  *Id.* at 838.  Therefore, "under Estelle and

*Farmer,* deliberate indifference has three components: (1)

subjective knowledge of a risk of serious harm; (2)

disregard of that risk; (3) by conduct that is more than

mere negligence."  *Farrow,* 320 F.3d  1235, 1246 (*citing*

*McElligot,* 182 F.3d 1248, 1255)(stating that defendant must

have subjective awareness of an "objectively serious need"

and that his response must constitute "an objectively

insufficient response to that need")).

Also, it is well established that a difference in opinion or a disagreement between an inmate and prison officials as to what medical care is appropriate for his particular condition does not state a claim for deliberate indifference to medical needs. *See Waldrop v. Evans,* 871 F.2d 1030, 1033 (11th Cir. 1989); *accord Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)(disavowing any attempts to second-guess the propriety or adequacy of a particular course of treatment, as this, along with all other aspects of health care, remains a question of sound professional judgment).

Likewise, the medical malpractice or negligence by a physician allegation is insufficient to form the basis of a claim for deliberate indifference. *See Estelle,* 429 U.S. at 105-07; *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995). Instead, something more must be shown. Evidence must support a conclusion that a prison physician's harmful acts were intentional or reckless. *See Farmer,* 511 U.S. 825, 833-38; *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996)(stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate)(*Adams* at 1543)(stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill,* 40 F.3d 1176, 1191 n. 28

(11th Cir. 1994)(recognizing that Supreme Court has defined
"deliberate indifference" as requiring more than mere
negligence).

### 1. Broken Right Hand

Plaintiff contends that the medical treatment he
received for his broken right hand was inadequate,
negligent, and constitutes medical malpractice.

Though a broken bone can qualify as a serious medical
need, there is not enough evidence in the record to
determine if Plaintiff's hand injury indeed qualifies as a
serious medical need.  Plaintiff fractured his hand on
November 9, 2012, just prior to his arrest.  He was
immediately treated by the Emergency Department at the
University of South Alabama Hospital with a hard cast, and
thereafter by Dr. Barrett and the medical staff at Metro
once he was transferred there.  Upon evaluating Plaintiff's
hand, Dr. Barrett referred him to an orthopedic surgeon,
Dr. Meyer, who examined Plaintiff's hand and determined
that his hand had sufficiently healed to the point that he
may weightbear and use only over-the-counter pain
medications as needed.  In response, Plaintiff offers no
verified medical evidence to dispute Dr. Barrett's or Dr.
Meyer's conclusions.  Without admissible evidence in the
record showing otherwise, the Court cannot find that

Plaintiff's right hand fracture constituted a serious medical need and his medical care claim as to his hand can be denied on that basis. Nevertheless, in the event that this fracture is a serious medical need, the Court will proceed with its analysis.[13]

Assuming Plaintiff's hand fracture is a serious medical need, Plaintiff must demonstrate more than inadvertence, negligence (even gross negligence), or medical malpractice to state an Eighth Amendment violation. *Lepper v. Nguyen,* 368 Fed. App'x. 35, 39 (11th Cir. 2010)(*citing Estelle* at 105-06). Similarly, "a simple difference in medical opinion" is not enough to prove deliberate indifference. *Waldrop v. Evans,* 871 F.2d 1030, 103 (11th Cir. 1989).

As set out above, once Plaintiff was in custody, his grievances regarding his hand did not go unanswered by Dr. Barrett or the medical staff at Metro, as he was treated numerous times by Dr. Barrett with pain medication and a referral to see an orthopedist. Additionally, on January 21, 2013, Plaintiff was seen by an orthopedic surgeon, Dr. Fred N. Meyer, who determined that "all fingertips align

---

[13]    *See Brown v. Hughes,* 894 F.2d 1533, 1538 (11th Cir. 1990)(no dispute that broken foot can be a serious and painful injury); *Minton v. Spann,* 2007 WL 1099114, at *16 (N.D.Fla. Apr. 10, 2007)(a broken bone is a serious medical need).

evenly" with only mild tenderness and swelling at the fracture site, Plaintiff's fifth metacarpal fracture had healed and he "may weightbear as tolerated . . . and may use over the counter pain medications as needed for pain." (Doc. 52 at 13). It appears that no follow up treatment was ordered by Dr. Meyer.

Plaintiff has not submitted any verifiable medical evidence to dispute either doctors' treatment and conclusions nor has he provided any evidence that his broken right hand would have healed any differently had another hard cast been placed on his hand. Plaintiff has also failed to demonstrate any new or exacerbated injury causally connected to the tongue depressors and adhesive tape that he alleges Dr. Barrett placed on his hand after Plaintiff removed his hard cast.

Under the standards set out above, and based on the medical records before the Court, Dr. Barrett treated Plaintiff's broken hand with standard care on a regular basis. Plaintiff has failed to come forward with any evidence that Defendants knew the manner in which Plaintiff was being treated created a substantial risk of harm to him, and that Defendants consciously disregarded that risk. Defendants deny Plaintiff's allegations of inadequate medical care and maintain that they rendered appropriate

treatment to Plaintiff for his injuries.  The evidentiary
materials filed herein support Defendants' assertions and
establish that Plaintiff was adequately treated for his
broken hand.  Plaintiff disagrees with the treatment he
received but that does not state a viable claim.
Accordingly, the Court finds that Defendants were not
deliberately indifferent to Plaintiff's serious medical
needs, namely, his right hand fracture, and this claim
fails.

### 2.  Compression Fracture

In addition to his complaints about his hand, the bulk
of Plaintiff's Complaint stems from the medical treatment
he did or did not receive for his T-spine compression
fracture, which he allegedly received from a truck wreck
approximately seven years prior to his incarceration.
(Doc. 31 at 2).  In addition to the compression fracture,
Plaintiff later alleges that a "fatty tumor" has developed
as a result of the lack of medical treatment he received
for his back.  (Docs. 32, 38 at 2, 2).

A compression fracture and the resulting back pain is
an objectively serious medical condition.  *Benson v. Gordon
Cnty., Ga.,* 479 Fed. App'x. 315, 318 (11th Cir. 2012).
However, a fatty tumor, medically referred to as a

"lipoma,"[14] is not considered an objectively serious medical
condition.  *Maddrie v. Parekh,* 2008 WL 2608105, *4 (M.D.
Fla. July 1, 2008); *see also Glaze v. Hall,* 2006 WL 360643,
*4 (S.D.Ga. Feb. 15, 2006)(noting that the condition is
rarely serious and does not cause pain); *Flores v.
Wellborn,* 199 Fed. App'x. 6, 7 (7th Cir. 2004)(referring to
doctor's affidavit that lipoma could not be source of
plaintiff's pain because a lipoma contains no nervous
tissue).

Plaintiff's compression fracture satisfies the serious
medical need requirement.  Therefore,, Plaintiff must come
forth with evidence that Defendants were deliberately
indifferent to that serious medical need because they knew
that Plaintiff faced a substantial risk of serious harm and
disregarded that risk by failing to take reasonable
measures to abate it.

The medical records demonstrate without dispute that
the medical Defendants and other medical personnel examined
Plaintiff for his back pain, evaluated his physical

---

[14]    According to the Mayo Clinic, a lipoma is defined as
"a slow-growing, fatty lump that's most often situated
between your skin and the underlying muscle layer. . . . It
is doughy to the touch and usually not tender. . . . A
lipoma isn't cancer and is usually harmless. Treatment
generally isn't necessary. . . ."  *Lipoma Definition,* Mayo
Clinic (September 17, 2013, 2:21 p.m.),
http://www.mayoclinic.com/health/lipoma/DS00634.

condition each time he asserted a complaint, prescribed pain medication to alleviate his discomfort, ordered necessary diagnostic tests to aid in their formulation of an appropriate treatment plan and engaged in a conservative pain management plan for Plaintiff's back. Plaintiff did receive on-going medical care and treatment.

Under these circumstances, it is clear that the course of treatment undertaken by the Defendants did not violate Plaintiff's constitutional rights. The medical care Plaintiff received was not "so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris v. Thigpen,* 941 F.2d 1495, 1505 (11th Cir. 1991).

Additionally, and although Plaintiff insists his fatty tumor and compression fracture require surgery by an orthopedic surgeon and stronger pain medicine, these assertions, without more fail to establish deliberate indifference. Such assertions illustrate a "classic example" of a matter for medical judgment, and as previously noted, a disagreement with medical attention provided does not arise to deliberate indifference. *Estelle,* 429 U.S. at 107; *see also Hamm,* 774 F.2d at 1575 (inmate's desire for other form of medical treatment does

not constitute deliberate indifference violative of the Constitution).

The Court notes, and Plaintiff admits, that his compression fracture is longstanding (docs. 1, 19 at 5, 2); however, Plaintiff offers no evidence that discovering the fracture sooner would have presented an opportunity to correct the fracture, or that his course of treatment would have been different if a T-spine x-ray, as opposed to the L-spine x-ray, had been ordered in the first place. Plaintiff has been living with this injury for more than seven years prior to his incarceration (doc. 19 at 2); thus, it is of no consequence that an L-spine x-ray was ordered before a T-spine x-ray. As previously stated, this is a classic example of a matter for medical judgment, with which the Court will not interfere. *Estelle* at 107; *see also Hamm* at 1575.

Moreover, Plaintiff's assertions of inadequate medical care, without verifiable medical evidence that he suffered any detrimental effect due to Defendants' actions or inactions, do not rise to the level of deliberate indifference. At best, Plaintiff offers the Court nothing more than his own unsubstantiated opinions about the quality of the medical care he received. Such opinions are insufficient to create a genuine issue of material fact,

and his failure to support his claim with medical evidence
is fatal to it.  *See Fullman v. Graddick, supra,* p. 6.

    3. Request for Dr. Houston's Medical Records

        and Medical Malpractice

Plaintiff contends that it is medical malpractice for
Dr. Barrett, Corizon and the medical staff at Metro to fail
to obtain his medical records from his previous physician,
Dr. Houston.  However, as set out above, claims of medical
malpractice do not rise to the level of a constitutional
tort such as deliberate indifference under § 1983.  *See
Estelle, supra,* p. 20.

Furthermore, unincarcerated persons face the same
course of treatment from private physicians when seeking
medical care not associated with the prison system.
Medical doctors are educated to practice medicine and
maintain licenses to do so for the purpose of evaluating
and diagnosing patients based on their own opinions and
conclusions of what they see when they consult with a
patient, rather than relying on another doctor's
conclusions.  Thus, retrieving prior medical records
formulated by another doctor is unnecessary in the public
or private medical sector and Dr. Barrett's failure to do
so does not rise to the level of deliberate indifference.
Furthermore, Plaintiff has not shown how his course of

34

treatment would have been different from what he received
had the records been available or that Defendants were
deliberately indifferent in not obtaining them.

### 4. Conditions of Confinement

Plaintiff complains about the conditions of his
confinement in the medical wedge and general population.
Specifically, he complains about the alleged ADA violations
in the medical wedge, the cleanliness in both the medical
wedge and general population, and overcrowding in general
population.

Regarding the alleged ADA violations, it is well
settled that "[a] local government . . . will be liable
under section 1983 only for acts which the local government
is actually responsible. *Turquitt v. Jefferson Cnty.,
Ala.,* 137 F.3d 1285, 1287 (11th Cir. 1998). In Alabama,
"each county within the state shall be required to maintain
a jail within their county" and the "county commission is
charged with erecting and maintaining jails . . . of
sufficient size and strength to secure prisoners," but have
no authority to dictate how jails are run. *Id.* at 1289-90
(*citing* Ala. Code §§ 11-14-10, 11-14-13 (1989)). Though
Defendants Cochran and Oliver contend that Metro is
currently compliant with the ADA (*see* Docs. 37, 37-1 at 1-
2, 2-3), they are not responsible for securing appropriate

accommodations for inmates as may be required by the
Americans with Disabilities Act.

Further, "[a]lthough the United States Constitution
does not require comfortable prisons, neither does it
permit inhumane ones." *Farmer v. Brennan,* 511 U.S. 825,
832 (1994). "After incarceration, only the unnecessary and
wanton infliction of pain constitutes cruel and unusual
punishment forbidden by the Eighth Amendment." *Ingraham v.
Wright,* 430 U.S. 651, 670 (1977)(*quoting Estelle,* 429 U.S.
97, 104 (citations and quotation marks omitted)). An
Eighth Amendment inhumane conditions of confinement claim
requires an inmate to satisfy an objective component and
subjective component. *Farmer,* 511 U.S. 825, 836. The
objective component requires the Court to look to
"contemporary standards of decency" to determine whether
the challenged condition resulted in a deprivation of "the
minimal civilized measure of life's necessities." *Rhodes
v. Chapman*, 452 U.S. 337, 347 (1981). Moreover, the
challenged condition must be "extreme . . . [b]ecause
routine discomfort is part of the penalty that criminal
offenders pay for their offenses against society, only
those deprivations denying the minimal civilized measure of
life's necessities are sufficiently grave to form the basis
of an Eighth Amendment violation." *Hudson v. McMillian*,

503 U.S. 1, 9 (1992) (citations and quotation marks omitted); *see Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004)("[i]f prison conditions are merely restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."). To be extreme, the challenged prison condition must "pose[] an unreasonable risk of serious damage to the prisoner's health or safety." *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010).

In a prison conditions case, the required state of mind for a defendant is "deliberate indifference" to an inmate's health or safety. *Farmer*, 511 U.S. at 834 (citations omitted). In defining "deliberate indifference," the Supreme Court in *Farmer* stated:

> We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837. "The known risk of injury must be a strong likelihood, rather than a mere possibility before a [state employee's] failure to act can constitute deliberate indifference." *Dobbins v. Giles*, 2011 WL 979214, at *5

(M.D.Ala. Feb. 28, 2011)(citations and quotation marks omitted).

Plaintiff has failed to state what risk of injury or injury he suffered from the alleged ADA violations, and likewise failed to establish the existence of an objectively substantial risk of serious harm to him, or which harm was disregarded by Defendants due to the Defendants failure to maintain Metro.  *See Marsh v. Butler Cnty., Ala.,* 268 F.3d 1014, 1027 (11th Cir. 2001).

As for Plaintiff's complaints of cleanliness and overcrowding, the Eighth Amendment standard of deliberate indifference articulated in *Estelle* and *Farmer* applies. *Wilson v. Seiter,* 501 U.S. 294, 303 (1991).

Here, Plaintiff fails to submit any evidence that the claimed uncleanliness of the jail posed a substantial risk of serious harm to him, or assuming a substantial risk of serious harm existed, that Defendants knew of and deliberately disregarded that risk causing injury to Plaintiff.  Plaintiff provides only unsubstantiated, unsworn statements as to the cleanliness of his cell. Nowhere in the record does he provide factually supported allegations that the conditions at Metro are inhumane. Without factual support, Plaintiff's statements are merely conclusory, and conclusory allegations with no factual

support are legally insufficient to defeat summary
judgment. *See Fullman,* 739 F.2d 553, 556-67 (a plaintiff's
mere verification of conclusory allegations is not
sufficient to oppose a motion for summary judgment).

Likewise, as to overcrowding in Metro, Plaintiff fails
to allege any injury which rises to the level of an Eighth
Amendment violation. Plaintiff contends that he has had to
sleep on a concrete floor, which he alleges caused a fatty
tumor to develop which protrudes out of his back when he
bends over.

Overcrowding in and of itself, absent evidence that
double celling inflicted unnecessary or wanton pain or was
grossly disproportionate to the severity of crime
warranting imprisonment, is insufficient to demonstrate an
Eighth Amendment claim of deliberate indifference. *Rhodes,*
452 U.S. at 348. Though not specifically stated, the Court
gathers that Plaintiff contends that, but for the
overcrowding, he would not have been sleeping on the floor
and thus, would not have developed a fatty tumor. However,
this contention is nothing more than an unverified, naked
assertion which falls short of satisfying his evidentiary
burden on the issue of proximate cause and deliberate
indifference. Plaintiff presents no verifiable medical

evidence which indicates that sleeping on the floor due to overcrowding will create or make worse a fatty tumor.

### 5. Retaliation

To the extent that Plaintiff raises a proper claim for retaliation, he alleges that he fears retaliation by the jail staff in his state-court proceedings for filing this lawsuit. Plaintiff does not indicate any action or inaction by Defendants that was done in the spirit of retaliation. He merely alleges "fear" that Defendants will retaliate against him for filing this lawsuit.

To prevail on a retaliation claim, an inmate must establish that: "(1) his speech was constitutionally protected; (2) he suffered adverse action which would likely deter a person of ordinary firmness from engaging in such protected speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *O'Bryant v. Finch,* 637 F.3d 1207, 1212 (11th Cir. 2011).

Applying the first prong, Plaintiff, as a pretrial detainee, has the constitutional right to file a § 1983 action to protest his medical care and the conditions of his confinement while housed at Metro. Turning to the second prong, Plaintiff has failed to demonstrate any adverse action by Defendants which would deter him from

pursuing these claims or that Defendants retaliated against him in any way after he filed this action.  Without satisfying the second element, Plaintiff fails to state a claim for retaliation and the third prong need not be considered.

## IV. CONCLUSION

For all of the reasons set out above, this Court concludes that Defendants Dr. Barry Barrett, Corizon Health, Sam Cochran and Noah Price Oliver, III are entitled to Summary Judgment in their favor on all claims asserted against them by Plaintiff.  Accordingly, it is recommended that Defendants' Motion for Summary Judgment be granted, that this action against these Defendants be dismissed with prejudice, and that judgment be entered in favor of Defendants and against Plaintiff on all claims.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(B); S.D.ALA. L.R.72.4.  In order to be

specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 27th day of September, 2013.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE